IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. 3:21-CR-42-TAV-DCP |
| JAMAINE LEMONS, ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter is before the Court on Defendant Jamaine Lemons's Motion to Suppress. [Doc. 18]. Defendant contends that a police officer was without probable cause to initiate a traffic stop and moves the Court to suppress the evidence seized from his person and vehicle and any statements made at the time of his arrest. The Government responds that the traffic stop was lawful based on probable cause of a traffic violation and that the search of Defendant was proper based on reasonable suspicion. [Doc. 21 at 1].[1] The Court held an evidentiary hearing on August 5, 2021. At the conclusion of the hearing, Defendant requested an opportunity to file a post-hearing brief, which was granted by the Court. Defendant filed his Post-Hearing Memorandum in Support of Motion to Suppress Evidence [Doc. 27] on September 3, 2021, and the Government filed its Post-Hearing Response [Doc. 28] on September 21, 2021. After fully

---

[1] While the Government initially maintained that the traffic stop was based upon probable cause to believe that there had been a traffic violation, in its analysis, the Government concludes "the stop of the vehicle was lawful because [the officers] had an 'objectively *reasonable suspicion*' that there was a traffic violation occurring." [Doc. 21 at 4] (emphasis added).

considering all of the parties' evidence and argument, it is respectfully **RECOMMENDED** that Defendant's motion to suppress be **DENIED**.

I.     FACTS

During the evidentiary hearing, the Government presented the testimony of Officers Patrick Reicherd ("Officer Reicherd") and Charles Crothers ("Officer Crothers"), both of the Rockwood Police Department. Defendant presented no witnesses. Based on the testimony of these witnesses and the exhibits presented, the Court makes the following factual findings.

On May 2, 2020, around 9:45 p.m., Officer Reicherd and his acting shift supervisor, Officer Crothers,[2] were working drug interdiction. [Doc. 24 at 21-22, 27-28]. As part of the interdiction activities, Officer Reicherd was monitoring a residence that has frequent drug activity. [*Id.* at 21]. The individual who lived at the residence was observed leaving the house and getting into a red Ford Edge, and that individual was a passenger in the back seat of the vehicle. [*Id.* at 21]. In attempting to run the license plate of the vehicle, as was common practice when performing drug interdiction, Officer Reicherd followed the vehicle up the road and observed that he could not see the license plate due to the cover. [*Id.* at 7 & 21]. As demonstrated by Officer Reicherd's in-car video footage [Ex. 1], he testified that he was unable to see the vehicle's tag, while following the Edge within an estimated car length and a half. [*Id.* at 10]. Officer Reicherd was unable to read the license plate at any point until after the car was stopped and he "got so close to it that it would have been an unsafe traveling distance to follow behind it on the road." [*Id.* at 7 & 9-11]. He pulled the vehicle over for having a tinted license plate cover. [*Id.* at 7]. Officer Reicherd, as well

---

[2] On the subject date, Officer Crothers was a field training officer and acting shift supervisor with the Rockwood Police Department. [Doc. 24 at 55]. He is now a detective. [*Id.* at 54].

as Officer Crothers, who arrived on the scene shortly after the stop was initiated, testified that the license plate cover appeared to have a yellow tint. [*Id.* at 7].

Officer Reicherd collected information from the driver of the vehicle, Ms. Burks, and identification from the other occupants. [*Id.* at 13]. When Defendant asked Officer Reicherd why they were pulled over, Officer Reicherd advised that "you're not supposed to have anything over the license plate—like a tinted cover or something that obstructs the view." [Exh. 2 at 21:49:44]. As he checked their status, Officer Crothers asked Ms. Burks questions, and she denied consent to search the vehicle. [*Id.* at 14]. A canine officer was called to the scene. [*Id.*]. In the meantime, Ms. Burks advised Officer Crothers that there was firearm in the car or inside of her purse and gave permission to retrieve the firearm for officer safety. [*Id*. at 15]. Officer Crothers did not find the firearm in the purse, so all the occupants were removed from the vehicle one by one and patted down for weapons. [*Id.*]. As Defendant was removed from the vehicle, he informed the officers that he had a weapon on his person, which was then recovered. [*Id.* at 16]. When the canine officer arrived on the scene, his canine alerted on the vehicle. [*Id.* 19-20]. Upon searching the vehicle, drugs and other items of paraphernalia were found. [*Id.* at 20]. The driver was cited for a registration violation under Tenn. Code. Ann. § 55-4-110. [Exh. 3].

II. ANALYSIS

Defendant seeks to suppress all evidence resulting from the traffic stop on May 2, 2020. The efficacy of Defendant's motion to suppress turns on whether Officer Reicherd had the requisite probable cause or reasonable suspicion to stop the vehicle because of a tinted license plate cover.

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. If an "officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment."

*United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993), *cert. denied*, 513 U.S. 828 (1994). Whether a traffic stop is an unreasonable seizure in violation of the Fourth Amendment is assessed, like other alleged Fourth Amendment violations, by objectively evaluating the officer's conduct in light of the surrounding circumstances known to the officer. *Id.* at 388; *see Whren v. United States*, 517 U.S. 806, 810 (1996) (holding that "[a]s a general matter, the decision to stop an automobile is reasonable [within the meaning of the Fourth Amendment] where the police have probable cause to believe that a traffic violation has occurred"); *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) (holding that "[a] police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct"). Probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion," *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). In other words, probable cause means a substantial chance or likelihood of criminal conduct. *Ferguson*, 8 F.3d at 392 (citing *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). A stop based on probable cause that a traffic violation has occurred is reasonable, without regard to the subjective motives of the officer. *Whren*, 517 U.S. at 813; *Ferguson*, 8 F.3d at 391.

Additionally, an officer may conduct an investigatory stop of a vehicle based upon reasonable suspicion of a traffic violation in some circumstances. *See Navarette v. California*, 572 U.S. 393, 396-97 (2014) (permitting investigatory stop of truck based on reasonable suspicion gained from tip from anonymous motorist that truck ran motorist off the road). An officer may stop a vehicle if the officer has reasonable suspicion of an *ongoing* traffic violation. *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008). An officer may stop a motorist for a *completed* misdemeanor, if the officer has reasonable suspicion to believe the individual committed the crime

4

and the stop furthers public safety, considering the nature and timing of the crime.[3] *United States v. Jones*, 953 F.3d 433, 437-38 (6th Cir.), *cert. denied* 141 S. Ct. 437 (2020) (observing the court must balance the security and liberty interests involved in stop for a completed misdemeanor on less than probable cause); *see also United States v. Howard*, 815 F. App'x 69, 73 n.1 (6th Cir. 2020) (noting with regard to a traffic violation that "reasonable suspicion of a completed misdemeanor may in some circumstances justify an investigatory stop").

In this case, Officer Reicherd initiated the stop of a vehicle in which Defendant was a passenger because there was a tinted cover on the license plate and he could not read the license number. Tennessee Code Annotated § 55-4-110(b) provides:

> Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so to prevent the plate from swinging and at a height of not less than twelve inches (12″) from the ground, measuring from the bottom of the plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible. . . . No tinted materials may be placed over a license plate even if the information upon the license plate is not concealed.

Tennessee Code Annotated § 55-4-110(b). The failure to maintain a legible license plate or the use of a tinted plate cover is an ongoing violation of § 55-4-110(b), so Officer Reicherd had to have reasonable suspicion of an illegible license plate or tinted plate cover for the stop of the Edge to comport with the Fourth Amendment. *Simpson*, 520 F.3d 531 at 541 (holding that an illegible license plate is an ongoing violation of Tenn. Code Ann. § 55-4-110(b) requiring reasonable suspicion for an investigatory stop).

---

[3]When examining the lawfulness of an investigatory stop of a vehicle for a completed misdemeanor, the Sixth Circuit approved the "facts-and-circumstances test" from *United States v. Hensley*, 469 U.S. 221, 226 (1985), which examines (1) the nature of the crime, (2) how long ago the individual committed the crime, and (3) whether the individual presents an ongoing risk to public safety and added the following additional factors: (4) if the Government has a strong interest in solving the crime and/or apprehending the perpetrator, and (5) whether waiting until the officer has probable cause will allow the perpetrator to flee. *Jones*, 953 F.3d at 437-38.

Defendant puts forth several arguments in support of his contention that the officer did not have probable cause to pull the vehicle over for having a tinted license plate cover, including Tennessee law does not require that an officer be able to read a license plate number from any specific distance, clear plastic plate covers are not illegal under § 55-4-110(b), and a clear plastic plate cover that is discolored for natural reasons should not be considered "tinted" under Tennessee law. Defendant asserts that while Officer Reicherd maintained that there appeared to be a yellow tint to the license plate cover, the video from the arrest shows the Wyoming license plate to be legible and the screen shots from the video do not appear to show a yellow tint on the license plate cover. [Doc. 27 at 3].

The Government argues that the record is clear that Officer Reicherd could not read the license plate until after he completed the stop of the vehicle and that he had probable cause or reasonable suspicion to believe a traffic violation occurred because of an unreadable registration plate in violation of Tennessee Code Annotated § 55-4-110. [Doc. 28 at 2-3]. The Court examines Defendant's arguments concerning the legibility of his license plate and the tint of his license plate cover.

### A. Legibility

Section 55-4-110(b) requires a license plate to be both "clearly visible" and "clearly legible." Defendant contends that the statute does not require a license plate to be legible from a specific distance. In *United States v. Simpson*, our appellate court examined the question of whether an illegible expiration date on a temporary tag gave the officer objectively reasonable suspicion that a violation of § 55-4-110(b) was occurring. 520 F.3d at 542-44. The court emphasized that "the proper question is not whether [defendant] was, in fact, violating § 55-4-110(b) by having an illegible expiration date on his temporary tag. The question is whether [the

6

officer] had an objectively reasonable suspicion that a violation of that statute was occurring." *Id.* at 542. The officer in *Simpson* testified that when traveling one car length behind the defendant's vehicle, he could not discern the expiration date of the tag even with his headlights shining directly on it. *Id*. He stated that he was only able to make out the expiration date once he had stopped the car, exited his own vehicle, and directly shined his flashlight on the plate from just a few feet away. *Id.*

In its analysis, the court noted there did not appear to be any Tennessee case law indicating a precise distance from which a temporary tag's expiration date must be visible, but "it seems reasonable to assume that more than a few feet is required." *Id.* Nevertheless, the court held that under the given facts, even assuming "the minimal legibility of the expiration date from a few feet away were enough to pass muster with section 110, the inability of the officer to perceive the expiration date while driving at very close proximity gave him at least reasonable suspicion to believe that the statute was being violated." *Id.*

Similarly, here, Officer Reicherd testified that when following one and one-half car lengths behind the Edge, the plate was unreadable because of the cover over it. Officer Reicherd testified that he was unable to read the license plate at any point until after the car was stopped. Once the car was stopped and the headlights from Officer Reicherd's patrol car were shining on the plate, it then became readable, as demonstrated in the photographs taken from Officer Marney's[4] body camera. [Collective Exh. 5]. However, it was clear from Officer Reicherd's testimony and supported by the video from his dash camera [Exh. 1], that the license plate number could not be discerned when he was following behind the car, even with his headlights shining on the plate from a safe travelling distance. Additionally, Officer Reicherd testified that while following the

---

[4] Officer Marney responded to the scene after the Edge was stopped and participated in the search of the Edge. [Doc. 24 at 13-14 & 36-37].

Edge, he radioed Officer Crothers that he could not read the number on the license plate. [Doc. 24 at 28; Exh. 1]. The fact that Officer Reicherd was unable to see the license plate number provides a "particularized and objective" basis for suspecting that there was a violation of § 55-4-110(b). Following the court's analysis in *Simpson*, the proper question is not whether the Edge was, in fact, violating § 55-4-110(b) by having a tint on the license plate cover, but whether the officer had an objectively reasonable suspicion that a violation of that statute was occurring."

Our appellate court recently revisited the question of whether § 55-4-110(b) requires an officer to be able to read a license plate from a particular distance. *United States v. Jackson*, No. 3:19-cr-00310, 2021 WL 2460626, *5 (M.D. Tenn. June 16, 2021). In *Jackson*, the officer testified she suspected a violation of the statute solely because her headlights reflected off a clear plastic cover on the registration tag and that reflection temporarily prevented her from seeing the otherwise legible information from approximately twenty-four feet away, although she could read the tag when stopped five or six feet behind it at a traffic light. *Id.* at *1. The court in *Jackson* found "it was not objectively reasonable for Officer Javins to believe that § 55-4-110(b) was violated when a clear plastic cover on the vehicle's registration plate created a temporary glare from her headlights approximately twenty-four feet away." *Id.* at 4. Observing that neither § 55-4-110(b) or the case law specifies the distance from which a license plate must be visible, the court found that imposing a distance, such as one car length, from which a plate must be visible "would allow police officers to create reasonable suspicion through their own subjective, discretionary selection of how far away they ought to be able to read a license plate" and would deprive motorists of notice of what the law proscribes. *Id.* Finding no other circumstances indicated a violation of § 55-4-110(b), the court held the officer's *temporary* inability to read the license plate due to the

reflection of her headlights off the clear plastic cover did not provide reasonable suspicion of a violation of the statute. *Id.*

The Court finds the instant case is distinguishable from the circumstances in *Jackson* in two major respects: First, unlike the officer in *Jackson*, Officer Reicherd's inability to read the license plate on the Edge was not temporary. Instead, Officer Reicherd testified that he could not read the license plate at any point before he stopped the Edge. Second, Officer Reicherd testified that while following behind the Edge, he was not able to run the license number, because the license plate cover appeared to have a yellow tint causing a reflection. [Doc. 24 at 21-22]. The Court finds that Officer Reicherd's inability to read the Edge's license plate while following behind it due to the reflection provided an objective and reasonable suspicion that the car's plate violated § 55-4-110(b).

Relying on *United States v. Lujan*, No. 4:17-cr-37, 2018 WL 3742452, *2 (E.D. Tenn. 2018), Defendant argues that an officer's ability to read a license tag while walking up to a vehicle after stopping it satisfies the requirement under § 55-4-110(b) that the plate be "clearly legible." [Doc. 27 at 4]. However, in *Lujan*, the court held that the officer had reasonable suspicion to stop the van based upon his inability to read the tag, which was a temporary tag with small writing contained inside a faded plastic bag. *Id.* at *5. Upon closer inspection of the license tag after the stop, the officer realized the tag was "legal," and the court held that, at that point, "[t]he reasonable suspicion supporting the stop had been satisfied." *Id.* Accordingly, the officer's inability to read the state of origin on the license plate from a distance of one and one-half car lengths while stopped at a traffic light gave him reasonable suspicion to investigate whether the van's license plate was in compliance with § 55-4-110(b). *See id*. at *1 & *5 (also analyzing the scope and duration of

the investigatory stop following the officer's determination that the temporary tag complied with the statute).

Defendant also relies on case law rejecting a violation of § 55-4-110(b) when an officer finds a portion of the license plate difficult to read. *See State v. Anderson*, No. M2004-00735-CCA-R3-CD, 2005 WL 292430, *2-4 (Tenn. Crim. App. Feb. 8, 2005). In *Anderson*, the officer testified that he could see the tag number on the plate but the issuing county was partially obscured by a commercial frame. *Id.* at *1. In granting the defendant's motion to suppress, the trial judge found that the entire license plate was legible, including the issuing county, remarking "'I don't know how the officer, especially when he got up on it, could not see that.'" *Id*. at 2. Defendant argues that the trial judge's statement "especially when he got up on it" indicates that if the officer can see all the information on the plate from a closer distance, there is no violation of § 55-4-110(b). However, the facts of the case do not reveal how close the officer was to the tag before stopping the vehicle.[5] In any event, the facts of *Anderson* are distinguishable from the instant case in which Officer Reicherd testified that he could not see the license plate at all until after he stopped the Edge.

Defendant also argues that an officer's subjective belief that a license plate is difficult to see is insufficient to stop a vehicle for a violation of § 55-4-110(b). *See State v. Hall*, No. E2006-01915-CCA-R3-CD, 2007 WL 2917728 (Tenn. Crim. App. Oct. 5, 2007). In *Hall*, the officer testified that the license plate, which was attached to a ladder on the back of a van was "not

---

[5] In *Anderson*, the trial judge's remarks were in response to the prosecution's argument that "law enforcement officers in Sumner County had a policy of stopping vehicles with commercial frames to hold license plates." *Id.* at *1. Thus, it appears the judge's remarks were intended to emphasize that it is the officer's observations of characteristics of the particular license plate, instead of a police policy, which give rise to reasonable suspicion of a violation of § 55-4-110(b).

10

illuminated and 'hard to see'" without using his patrol car's headlights. *Id.* at *1. The state appellate court held that the officer did not have reasonable suspicion to stop the van:

> Officer Rice did not testify that he was unable to see the license plate, but rather, he said "it was hard to see [the license plate.]" Furthermore, Officer Rice acknowledged that the license plate was displayed in conformity with section 55-4-110(b) in that the plate was fastened securely at a lawful height, was not covered by tinted materials, and did not have foreign materials on it.

*Id.* at *3. The court found the officer's "subjective judgment that the license plate was 'hard to see' cannot be construed as a 'particularized and objective basis' for suspecting" a violation of § 55-4-110(b). *Id.* at *4.

Similarly, in *Simpson*, our appellate court rejected the lower court's finding that any limitation of the visibility of any part of a license plate, even if easily cured by a small change in distance or illumination of headlights can constitute a violation of § 55-4-110(b). 520 F.3d at 544. Citing to *Hall*, the court in *Simpson* held this overly broad interpretation of § 55-4-110(b) "would mean that a police officer who had difficulty seeing a license plate at some unspecified distance or position, even if the license plate were visible at a closer distance or different position, could nevertheless stop a vehicle." *Id.*

In the instant case, it was not a small change in distance or the mere use of headlights that allowed Officer Reicherd to read the license plate number on the Edge. Instead, Officer Reicherd testified that his headlights reflected off the tinted plate cover and that he could not read the license plate until after he stopped the Edge, at which point he was closer than a safe driving distance. [Doc. 24 at 21, 38, 45, 48-49, & 51-52]. Under these facts, the Court concludes that Officer Reicherd at least had reasonable suspicion to believe that the license plate was improperly displayed under § 55-4-110 based on his inability to read the tag number while traveling close enough to be maintaining a safe traveling distance behind the vehicle.

### B. Tint

Finally, Defendant argues that the Government has not carried its burden of proving by a preponderance of the evidence that license plate cover on the Edge was tinted and not merely discolored from natural reasons such as becoming dirty or faded by the sun. He contends that § 55-4-110(b), by its plain language does not prohibit clear plastic covers on registration plates. *Jackson*, 2021 WL 2460626, *5 (finding that § 55-4-110(b)'s prohibition of only tinted covers reveals the legislature did not intend to prohibit clear covers).[6] He argues that the statute does not define "tint" and that a sun-faded plastic cover through which the license plate remains legible is not a violation of § 55-4-110(b), because sun discoloration is not a "foreign material" as expressly proscribed by the statute. Defendant contends that the totality of the circumstances do not reveal that Officer Reicherd had a reasonable suspicion that the license plate violated § 55-4-110(b).

As an initial matter, the Court finds that Defendant is mixing the statute's requirement of visibility and legibility (i.e., that the plate may not be obstructed by a foreign material) with its prohibition of a tinted cover. Section 55-4-110(b) expressly prohibits a tinted license plate cover, "even if the information upon the license plate is not concealed." Both Officer Reicherd and Officer Crothers testified that the license plate cover on the Edge had a yellow tint.[7] The Court

---

[6] Defendant argues that clear plastic license plate covers are not prohibited by § 55-4-110(b), but the Government does not allege that the mere presence of a license plate cover is a violation. Defendant asserts that Officer Reicherd stopped the Edge solely because it had a license plate cover, because Officer Crothers told Officer Reicherd, "If it's got a plate cover, that's your stop." However, Officer Reicherd testified that the license plate cover appeared to be tinted because there was a reflection and he could not see the license plate. [Doc. 24 at 21]. Additionally, Officer Crothers testified that he told Officer Reicherd to stop the Edge because Officer Reicherd said it had a plate cover and he could not read the license plate. [*Id.* at 64]. However, Officer Crothers said, "Had I showed up to the scene and it was a clear license plate cover and he didn't have the stop, the stop would have been terminated." [*Id.*]. Thus, the Court finds that neither officer stated that the Edge was stopped simply because it had a license plate cover.

[7] Although on cross-examination, Officer Reicherd agreed that in the screen shots from the video [Exh.5] the license cover did not appear to have a tint, he affirmatively testified that on the

12

finds scant evidence that the tint on the plate cover was due to natural discoloration such as fading from the sun. Although Officer Crothers agreed on cross-examination that the license plate cover could have been faded by the sun, he also said it could have been purchased with a yellow tint. [Doc. 24 at 61]. Officer Reicherd testified that yellow-tinted plate covers can be purchased at stores that sell auto parts. [Doc. 24 at 46]. However, the Court need not determine how the plate cover became tinted. Instead, the question in the instant case is whether Officer Reicherd had reasonable suspicion to conduct an investigatory stop. Officer Reicherd's observation of the tint on the plate cover provided a sufficient basis for him to stop the Edge to determine whether its license plate cover violated § 55-4-110(b).

As noted by Defendant, an investigatory "stop must be justified at its inception." *United States v. Blair*, 524 U.S. 740, 748 (6th Cir. 2008). Looking to the totality of the circumstances at the time of the stop, Officer Reicherd followed the Edge at a distance of one and one-half car lengths, attempting to read the license plate in order to run a check on it. At no point up until the Edge was stopped, could Officer Reicherd read the license plate. Officer Reicherd radioed Officer Crothers and told him that the Edge had a plate cover and that he could not read the plate. Officer Reicherd testified that because of the tinted license plate cover there appeared to be a reflection off the Edge's license plate and he could not read it. The Court finds these circumstances provided a "particularized and objective" basis for the officer to suspect a violation of § 55-4-110(b).

video recording and on the night of the stop, the license plate cover had a yellow tint. [Doc. 24 at 45-46]. On redirect examination, Officer Reicherd testified that both the video and the screen shots show that the license plate cover has a yellow tint. [Doc. 24 at 50-51]. On recross-examination, Officer Reicherd stated that the only physical evidence of the tint was the video recording, and he agreed that his headlights shining on the back of the Edge emanated a yellow light on the Edge's license plate. [Doc. 24 at 52-53]. Despite Officer Reicherd's wavering on the color on the printout of the screen shots [Exh.5], he consistently testified that he saw what appeared to be a yellow tint on the plate cover on the night of the stop. [Doc. 24 at 7, 11, 21-22, 40, 45, 49, & 52]. The Court finds Officer Reicherd's testimony that the license plate cover on the Edge had a yellow tint is both credible and unimpeached.

13

Accordingly, the Court finds Officer Reicherd's stop of the Edge did not violate the Fourth Amendment.

## III. CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the Court finds no basis to suppress the evidence resulting from the stop of the vehicle in which Defendant was a passenger. For the reasons set forth herein, the Court **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 18] be **DENIED**.[8]

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[8] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Judge need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).