UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:21-CR-42-TAV-DCP-1 |
| JAMAINE LEMONS, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation (the "R&R") entered by United States Magistrate Judge Debra C. Poplin on November 4, 2021 [Doc. 29]. The R&R addresses defendant's Motion to Suppress [Doc. 18] to which the government responded [Doc. 21] and for which Judge Poplin held a hearing on August 5, 2021 [Doc. 24]. Defendant filed a post-hearing brief [Doc. 27], and the government responded [Doc. 28].

The R&R recommends that the Court deny defendant's motion to suppress [Doc. 29]. Defendant filed objections to the R&R [Doc. 30], and the government responded [Doc. 31]. This matter is now ripe for resolution. *See* E.D. Tenn. L.R. 7.1(a). As discussed *infra*, the Court will **OVERRULE** defendant's objections [Doc. 30], **ACCEPT IN WHOLE** the R&R [Doc. 29], and **DENY** defendant's Motion to Suppress [Doc. 18].

## I. Background[1]

In the late evening of May 2, 2020, Officers Patrick Reicherd ("Reicherd") and Charles Crothers ("Crothers") were on drug interdiction duty [Doc. 29 p. 2]. Reicherd was monitoring a residence known to have frequent drug activity, and an individual left the residence and entered a Ford Edge as a back-seat passenger [*Id.*]. Reicherd followed and attempted to run the license plate of the vehicle; however, Reicherd could not read the license plate due to a license plate cover even when following the vehicle closely [*Id.*].[2] Reicherd stopped the vehicle because he perceived the vehicle as having a tinted license plate cover [*Id.*]. At the suppression hearing, Reicherd and Crothers, who arrived at the scene shortly after the stop occurred, testified that the license plate cover had a yellow tint [*Id.* at 2–3 (citations omitted)]. When defendant asked Reicherd the reason Reicherd stopped the vehicle, Reicherd advised, "you're not supposed to have anything over the license plate—like a tinted cover or something that obstructs the view" [*Id.* at 3 (citation omitted)].

Shortly afterwards, the driver advised Crothers she had a firearm either in the passenger door of her vehicle or inside her purse, and she consented to Crothers retrieving the firearm for purposes of officer safety [*Id.*]. However, Crothers did not locate the firearm when he checked these locations, and therefore, he removed the occupants from

---

[1] Because the Court ultimately adopts Judge Poplin's factual findings as reflected in the R&R, this Part recounts the relevant facts as stated in the R&R.

[2] Indeed, Reicherd could read the license plate only after he stopped the vehicle and was at distance "so close to it that it would have been an unsafe traveling distance to follow behind it . . . ." [Doc. 29 p. 2 (citation omitted)].

2

the vehicle individually to pat them down for weapons [*Id.*]. When Crothers removed defendant, defendant stated he had a weapon, and the officers retrieved a firearm from his person [*Id.*]. A subsequent unchallenged search of the vehicle yielded drugs and related paraphernalia [*Id.*]. The driver received a citation for a violation of Tennessee Code Annotated § 55-4-110 [*Id.*].

Subsequently, the government charged defendant with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) [Doc. 1]. Defendant filed a motion to suppress, arguing the traffic stop was invalid and seeking to suppress the relevant firearm, ammunition, and his statement that he had a firearm on his person [Doc. 18]. Judge Poplin conducted an evidentiary hearing [Doc. 24] and subsequently issued the R&R, which recommends that the Court deny defendant's motion [Doc. 29]. Defendant filed the instant objections [Doc. 30].[3]

## II.     Standard of Review

Defendant raises multiple factual and legal objections to the R&R. Courts review objections to factual findings in a report and recommendation for clear error. *United States v. Norton*, No. 2:19-CR-145, 2021 U.S. Dist. LEXIS 47316, at *5–6 (E.D. Tenn. Mar. 15, 2021). "Under the clearly erroneous standard[,] . . . the Court need only consider whether any evidence or showing exists to support the Magistrate Judge's finding and whether the finding was reasonable." *Id.*; *see also United States v. Valencia*, No. 3:11-CR-159-H, 2012

---

[3] The government responds to defendant's objections and notes it relies on its previous filings, evidence presented at the suppression hearing, and the reasoning in the R&R [Doc. 31].

3

U.S. Dist. LEXIS 172470, at *4 (W.D. Ky. Dec. 4, 2012) ("[A] magistrate judge's factual determinations are afforded great deference given his or her superior position of viewing the witnesses and testimony firsthand." (citing *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007))). However, courts review legal objections to a report and recommendation *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).

**III. Analysis**

    **A. Factual Objections**

Defendant objects to several factual findings in the R&R. First, defendant challenges the finding that "Officer Reicherd followed the Edge at a distance of one and one-half car lengths, attempting to read the license plate in order to run a check on it" [Doc. 29 p. 13].[4] Second, defendant challenges the finding that "Officer Reicherd . . . observed that he could not see the license plate due to the cover" [*Id.* at 2]. Third, defendant challenges the finding that "Officer Reicherd's inability to read the license plate on the Edge was not temporary" [*Id.* at 9].

The Court finds that none of Judge Poplin's factual findings on these issues were clearly erroneous. As to defendant's first and second objections, trial testimony and the video from Reicherd's patrol car demonstrate Reicherd followed the Ford Edge at about one-and-one-half car lengths, and Reicherd's testimony and audio before Reicherd initiated the stop suggest Reicherd attempted to read the license plate before initiating the stop but

---

[4] Defendant suggests this objection is a legal rather than factual objection as he includes it among his legal objections [Doc. 30 p. 2]. However, the Court considers this objection to be factual because it regards Reicherd's actions and observations.

could not do so specifically due to a license plate cover [Doc. 24 pp. 7, 9–10; *id.* (suppression hearing, exhibit 1, 00:00–00:33)].  As to defendant's third objection, Reicherd's testimony and video evidence demonstrate Reicherd's inability to read the license plate was "not temporary" in that Reicherd could not read the license plate until he stopped the vehicle [*Id.* at 9–11; *id.* (suppression hearing, exhibit 1, 00:00–00:54)].

Defendant also raises two factual objections regarding the tinting of defendant's license plate cover.  First, defendant challenges the finding that Reicherd could not read the vehicle's license plate because of a yellow-tinted cover [Doc. 29 pp. 9, 13–14].  Second and relatedly, defendant challenges the finding that Reicherd actually believed the license plate cover had a yellow tint and accordingly stopped the vehicle on that basis [*See id.* at 2 (stating that Reicherd stopped the vehicle "for" (i.e., because) the vehicle had a tinted plate cover)].  Defendant highlights the officers' statements before and during the stop and asserts these statements indicate the officers' erroneous and overbroad belief that Tennessee law prohibits vehicles from having "anything," even a clear license plate cover, over a license plate [Doc. 30 pp. 4–5].  Defendant provides five specific arguments in support: (1) the officers never mentioned an illegal tint until the hearing on the motion to suppress; (2) Reicherd's testimony at the hearing was inconsistent as to whether the plate cover was tinted; (3) the officers took no pictures of the license plate cover after observing it was tinted; (4) the traffic citation does not mention a tinted plate cover; and (5) the video and corresponding screenshots from Reicherd's police cruiser demonstrate the license plate was readable [*Id.* at 4–5, 9].

5

The Court will overrule these factual objections as well. While Reicherd did not initially identify that the license plate cover was tinted, he repeatedly testified that the plate cover had a yellow tint that caused him to be unable to read the plate, and he explained that tinted plate covers are illegal when the driver asked him the purpose of the stop [Doc. 24 pp. 7, 11, 21, 40, 46; *id* (suppression hearing, exhibit 1, 00:00–00:33); *id.* (suppression hearing, exhibit 2, 02:43–03:06)]. Moreover, Reicherd explicitly testified the purpose of the stop was that the vehicle had a tinted plate cover [*Id.* at 7]. Reicherd's belief that the plate cover was tinted is supported by Crothers's consistent testimony that the plate cover was tinted [*Id.* at 61–62].

The Court rejects defendant's specific arguments to the contrary. First, defendant is incorrect that a tinted plate cover was not mentioned before the suppression hearing. Indeed, Reicherd specifically informed defendant that tinted plate covers are illegal during the stop [*Id.* (suppression hearing, exhibit 2, 02:43–03:06)]. Second, the Court recognizes Reicherd's testimony was somewhat equivocal in a few instances as to whether the license plate cover was tinted, but in other instances, Reicherd unequivocally testified the reason for the stop was that the vehicle had a yellow-tinted license plate cover [*Id.* at 7]. Third and Fourth, while there is no photo of the license plate cover and the traffic citation does not mention a tinted plate cover, the Court does not afford these facts greater weight than the already-discussed evidence that demonstrates Reichard's purpose for the stop was that Reicherd believed the license plate cover was tinted. Finally, after reviewing the video evidence, the Court disagrees with defendant that the video evidence demonstrates the plate

6

was readable when Reicherd initiated the stop [*See id.* (suppression hearing, exhibit 1, 00:00–00:33)]. It is true that certain screenshots of bodycam footage introduced at the hearing portray the license plate in a readable manner, but these photos are of the license plate when officers were standing immediately beside the vehicle [*See id.* (suppression hearing, exhibit 5); *see also id.* (suppression hearing, exhibit 4)]. Therefore, they are not probative regarding Reicherd's ability to read the plate before he initiated the stop.

For these reasons, the Court agrees with Judge Poplin's factual findings. At minimum, the record supports Judge Poplin's factual findings, and those findings were reasonable in light of the record as a whole. *See United States v. Norton*, No. 2:19-CR-145, 2021 U.S. Dist. LEXIS 47316, at *5–6 (E.D. Tenn. Mar. 15, 2021).

Therefore, defendant's factual objections will be **OVERRULED**.

### B.     Legal Objections

Defendant objects to several legal conclusions in the R&R. First, defendant argues Judge Poplin incorrectly found Reicherd had reasonable suspicion that the license plate was unlawful "based on his inability to read the tag number while traveling close enough to be maintaining a safe traveling distance behind the vehicle" [Doc. 29 p. 11]. Second, defendant challenges Judge Poplin's conclusion that "Officer Reicherd's observation of the tint on the plate cover provided a sufficient basis for him to stop the Edge to determine whether its license plate cover violated § 55-4-110(b)" [*Id.* at 13]. Third, defendant challenges Judge Poplin's conclusion that Reicherd had a "particularized and objective" basis to stop the vehicle for a violation of § 55-4-110(b) [*Id.*]. Fourth, defendant argues

7

Reicherd's inability to read the vehicle's license plate "for a moment as the car turned in front of him [wa]s not a valid basis for the stop" [Doc. 30 p. 4]. The Court notes all of these objections effectively challenge Judge Poplin's finding of reasonable suspicion to initiate the stop, and therefore, the Court addresses these objections together.

The R&R provides the correct standards for determining whether Reicherd had requisite suspicion to initiate the traffic stop:

> The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. If an "officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993), *cert. denied*, 513 U.S. 828 (1994). Whether a traffic stop is an unreasonable seizure . . . is assessed, like other alleged Fourth Amendment violations, by objectively evaluating the officer's conduct in light of the surrounding circumstances known to the officer. *Id.* at 388; *see Whren v. United States*, 517 U.S. 806, 810 (1996) . . . ; *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) . . . . Probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion," *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). In other words, probable cause means a substantial chance or likelihood of criminal conduct. *Ferguson*, 8 F.3d at 392 (citing *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). A stop based on probable cause that a traffic violation has occurred is reasonable, without regard to the subjective motives of the officer. *Whren*, 517 U.S. at 813; *Ferguson*, 8 F.3d at 391.
>
> Additionally, an officer may conduct an investigatory stop of a vehicle based upon reasonable suspicion of a traffic violation in some circumstances. *See Navarette v. California*, 572 U.S. 393, 396-97 (2014) . . . . An officer may stop a vehicle if the officer has reasonable suspicion of an *ongoing* traffic violation. *United States v. Simpson*, 520 F.3d 531, 541 (6th Cir. 2008). An officer may stop a motorist for a *completed* misdemeanor, if the officer has reasonable suspicion to believe the individual committed the crime and the stop furthers public safety, considering the nature and timing of the crime. *United States v. Jones*, 953 F.3d 433, 437-38 (6th Cir.), *cert. denied* 141 S. Ct. 437 (2020) . . . ; *see also United States v. Howard*, 815 F. App'x 69, 73 n.1 (6th Cir. 2020) . . . .

8

> In this case, Officer Reicherd initiated the stop of a vehicle in which Defendant was a passenger because there was a tinted cover on the license plate and he could not read the license number. Tennessee Code Annotated § 55-4-110(b) provides:
>
>> Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle . . . in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible. . . . No tinted materials may be placed over a license plate even if the information upon the license plate is not concealed.
>
> Tennessee Code Annotated § 55-4-110(b). The failure to maintain a legible license plate or the use of a tinted plate cover is an ongoing violation of § 55-4-110(b), so Officer Reicherd had to have reasonable suspicion of an illegible license plate or tinted plate cover for the stop of the Edge to comport with the Fourth Amendment. . . .

[Doc. 29 pp. 3–5 (footnote omitted) (explanatory parentheticals omitted)].

Applying these standards, the Court finds Judge Poplin correctly concluded Reicherd had requisite suspicion to initiate the traffic stop. As the R&R details, Reicherd's testimony and video evidence confirms Reicherd followed the vehicle at one-and-one-half car lengths, and despite following this closely, he was unable to read the license plate because of a perceived tinted plate cover [Doc. 24 pp. 7, 9–10, 21; *id.* (suppression hearing, exhibit 1, 00:00–00:54)]. True, Reicherd followed defendant while turning a corner and thus when his vision would have been somewhat impeded, but Reicherd also followed the vehicle at short distances without turning and thus when he otherwise would be able to read a license plate [*Id.* (suppression hearing, exhibit 1, 00:00–00:33)]. Indeed, Reicherd specifically mentioned that tinted covers are illegal during the stop, and he specifically testified that the purpose for the stop was a tinted plate cover [*See id.* at 7; *see id.*

9

(suppression hearing, exhibit 2, 02:43–03:06)]. Therefore, Judge Poplin correctly determined that Reichard had requisite suspicion to stop the vehicle based on a suspected violation of Tennessee Code Annotated § 55-4-110(b).

Second, defendant argues the stop was invalid because Reicherd initiated the stop relying on the erroneous belief that a driver cannot have "anything" over a license plate, including a legal plate cover [Doc. 30 pp. 4–5 (citation omitted)]. Defendant explains that Reicherd told the vehicle's occupants they could not have "anything" over the license plate "like a tinted cover or something that obstructs the view" and argues this statement is legally incorrect because clear plastic covers are legal [*Id.* (citation omitted)]. The Court notes this objection would be relevant only if the Court had found Reicherd in fact initiated the stop because the vehicle had a plate cover, irrespective of its tint. However, the Court has already determined Judge Poplin correctly found Reicherd stopped the vehicle based on his perception of a tinted plate cover. Therefore, this objection is moot.[5]

Third, defendant notes Reicherd's ulterior purpose for the stop was for drug interdiction and that the officers had no independent basis to stop the vehicle [*Id.* at 5–6,

---

[5] If the Court were to agree with defendant that Reicherd did not rely on the cover being tinted when he initiated the stop, the Court would need to analyze whether the stop was illegal because Reicherd had an invalid basis for the stop. The Court notes this question is different than the issue presented in *Whren v. United States*, 517 U.S. 806, 813 (1996), because the *Whren* issue arises when an officer relies upon a valid basis for a stop even though the officer's ulterior purpose for the stop is one that probable cause does not support. *See, e.g.*, *United States v. Hughes*, 606 F.3d 311, 315–16 (6th Cir. 2010). Yet the instant question arises when, whether or not a valid basis for the stop exists, the officer does not rely on that valid basis. While the Court notes this issue, it reserves comment because defendant's argument is moot and thus any comment would be in dictum. *See Copen v. United States*, 3 F.4th 875, 886–87 (6th Cir. 2021) (citing Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1255–56, 1261–63 (2006)).

10

9]. Defendant discusses the Supreme Court's decision in *Whren v. United States*, 517 U.S. 806, 813 (1996), and notes commentators have disagreed with *Whren* [Doc. 30 pp. 5–6]. The Court rejects this argument for two reasons. First, as discussed, Reicherd had a legitimate, alternate basis for the stop given his perception of the tinted plate cover, so any ulterior motive is irrelevant under *Whren*. *See United States v. Shelton*, 817 F. App'x 217, 219 (6th Cir. 2020) (citing *Whren*, 517 U.S. at 810, 812). Second, to the extent defendant challenges the *Whren* decision itself, the Court must reject this challenge as *Whren* is valid Supreme Court precedent and thus binds this Court. *See id.*

Finally, defendant argues that "tinted materials" as used in § 55-4-110(b) does not include materials tinted from natural causes, such as sun fading, and defendant suggests the plate cover in this case could have been naturally tinted [Doc. 30 pp. 6–8]. Particularly, defendant argues "tinted materials" refers only to artificially-tinted covers [*Id.*]. Defendant recognizes the statute itself does not define "tinted" but asserts the Court should construe "tinted" to refer only to artificial tinting because the statute that prohibits highly-tinted windows only applies to artificially-tinted windows [*Id.* (citation omitted)]. Defendant suggests a contrary holding would provide too much discretion and allow officers to stop any vehicle without a new plate cover [*Id.* at 7–8].

The Court rejects this argument. First, the plain meaning of the statute does not support the limitation defendant seeks to impose. The plain meaning of § 55-4-110(b) applies generally to all "tinted" covers, and nothing in the statute demonstrates the Tennessee General Assembly's intent to limit the statute's application to artificially-tinted

11

covers. Thus, adopting defendant's interpretation would raise federalism and separation of powers concerns by ignoring the statute's plain meaning in favor of a judicially-crafted exception to a generally-applicable statute. *See Violette v. P.A. Days, Inc.*, 427 F.3d 1015, 1017 (6th Cir. 2005). Moreover, defendant's interpretation is ill-advised because adopting it would have no practical effect. As noted, whether an officer may stop a vehicle hinges on the officer's reasonable beliefs. *See Ferguson*, 8 F.3d at 391. Yet testimony demonstrates that artificially-tinted and naturally-tinted plate covers have similar if not identical appearances [*See* Doc. 24 pp. 61–63]. Thus, even under defendant's interpretation, officers could reasonably stop drivers with even naturally-tinted plate covers because those same covers appear artificially-tinted.

Consequently, defendant's legal objections will be **OVERRULED**.

### IV. Conclusion

Accordingly, the Court finds the factual findings and recommendations in the R&R are correct. Thus, defendant's objections [Doc. 30] are **OVERRULED**. The Court **ACCEPTS IN WHOLE** the R&R [Doc. 29] and incorporates the R&R into this Memorandum Opinion and Order. Therefore, defendant's Motion to Suppress [Doc. 18] is **DENIED**.

IT IS SO ORDERED.

                                                  s/ Thomas A. Varlan
                                                  UNITED STATES DISTRICT JUDGE